### MIDDLETON & RAVENEL v. TABER & WILLARD.

1. SUPREME COURT—CONSTITUTION OF 1895.—Where the Constitution of 1868 provided for a Supreme Court of three, and the Constitution of 1895 for one of four, and the Constitution of 1895 provided that the Chief Justice and two Associate Justices should hold as such Chief Justice and Associate Justices of the Court under Constitution of 1895; that all laws in conflict with its provisions requiring legislation to enforce them, should remain of force until proper legislation is had; and that the Legislature at its next ‑ session should elect a third Associate Justice; the Court, as organized under the Constitution of 1868, had jurisdiction to hear any cause pending therein before the meeting of the Legislature at which the third Associate Justice was to be elected—construing secs. 2, 3, 6, 12, and 34 of art. V. and. secs. 6 and 11 of art. XVII. of Constitution of 1895.

2. IBID.—IBID.—The Constitution of 1895 does not abolish the Supreme Court of the Constitution of 1868, and create a new Court, but simply continues it and adds one more Justice.

3. IBID.—CONSTITUTIONAL QUESTION.—The Supreme Court of three, as organized under the Constitution of 1868, had jurisdiction to hear any constitutional question in a cause pending before the first meeting of the Legislature, as provided in the Constitution of 1895, at which the third Associate Justice should be elected—construing secs. 3, 6, and 34 of art. V., and sec. 6 and sub. 9 of sec. 11 of art. XVII. of the Constitution of 1895.

4. DEED OF ASSIGNMENT—HABENDUM.—The deed of assignment in this case

22—46

contains no *habendum* clause, but in the granting clause conveys the property to the assignee, "his heirs, executors, administrators, and assigns." *Held* to pass a fee.

5. DEED OF ASSIGNMENT—TRUST—LIMITATIONS.—The general rule is, that when a trust is created, a legal estate sufficient for the purposes of the trust shall, if possible, be implied in the trustee, whatever may be the limitations in the instrument, and under this rule this deed otherwise construed to carry a fee to the trustee.

6. IBID.—REV. STAT., 2146—CASE FOLLOWED.—A deed of assignment which does not provide for the payment of partnership debts out of partnership assets, and if insufficient to pay in full, then for any balance due such creditors to be paid ratably with the creditors of the individuals composing such firm, out of the individual assets of such persons, is void under Rev. Stat., 2146—following *Blair* v. *Black*, 31 S. C., 346.

7. IBID.—A deed of assignment which conveys partnership and individual assets to assignee in trust, to be divided amongst partnership creditors, is void, because it makes a preference of partnership creditors to exclusion of creditors of individuals composing the firm.

8. IBID.—ASSIGNEE.—The deed of assignment is the chart of the assignee, and he has no power to do anything except what the deed confers, or to do it in any other way than as the deed directs.

9. RECEIVER.—This action brought by one creditor to set aside a deed of assignment for his own benefit, and not calling in other creditors, is not a proper case for the appointment of a receiver.

Before WATTS, J., Orangeburg, April 2, 1895.    Modified.

Action commenced March 15, 1895, by Middleton & Ravenel, against Albert R. Taber and George W. Willard, as individuals and as firm of Taber & Willard, R. Goodwyn Murphy, as assignee, and Thomas R. Legare, as agent of creditors, to set aside the following deed of assignment:

"The State of South Carolina, county of Orangeburg. This indenture, made this 19th day of January, A. D. 1895, between Albert R. Taber and George W. Willard, partners in trade doing business in the town of Fort Motte, in the county and State aforesaid, under the style of Taber & Willard, of the first part, and R. Goodwyn Murray, of the said county and State, of the second part, witnesseth: that the parties of the first part being indebted to divers persons in various sums of money, and unable to pay their debts in

full, but desiring to provide for the payment of the same
by an assignment of all their property belonging to them
as such copartners and as individuals, for the benefit of all
their creditors, without preference or priority of any kind
whatsoever, save only as to such of the creditors of the
parties of the first part as shall accept the terms of this as-
signment, and execute a release in writing of their respective
claims against the said parties of the first part, for and in
consideration of the sum of one dollar to each of the said
parties of the first part in hand paid by the party of the
second part, at and before the sealing and delivery of these
presents (the receipt whereof is hereby acknowledged), and
of the trust herein reposed, have granted, bargained, sold,
assigned, conveyed, transferred, released, and set over, and
by these presents doth grant, bargain, sell, assign, transfer,
release, and set over all their copartnership and individual
property, both real and personal, of whatsoever the same
may consist and wheresoever situate, including all and sin-
gular the lands, tenements, hereditaments, and appurte-
nances, goods, merchandise, chattels, stocks and notes, choses
in action, debts, evidences of debts, claims, demands, prop-
erty and effects of every kind and description whatsoever
(save and except only such property, real and personal, as
is by law exempt from execution, levy, and sale), unto the
said party of the second part, his heirs, executors, adminis-
trators, and assigns: in trust, however, as assignee, for the
benefit of the creditors of the said parties of the first part, to
the end that the said R. Goodwyn Murray, assignee, shall
take immediate possession of the said property, and convert
the same into money by public or private sale with reason-
able diligence and dispatch, and to collect such debts, choses
in action, and demands hereby assigned, as may be collecta-
ble, with the right to compromise such debts, choses in
action, and demands, where the said party of the second
part may deem it expedient so to do, and out of the pro-
ceeds of such sales and collections: First, to pay the costs,
charges, disbursements, and expenses of executing the as-

signment, and carrying into effect the trust hereby created and reposed, including a reasonable attorney's fee, together with the lawful commissions of the party of the second part for his services in executing the trust hereby created; second, to pay and discharge in full, if the residue of such proceeds is sufficient for that purpose (but if not, then ratably and in proportion, without any priority or preference whatsoever), the claims of such of the creditors of the parties of the first part who shall accept in writing the terms of this assignment, and execute a release or releases of their respective claims against the said parties of the first part; third, and then and next to pay in full (if the residue of such proceeds is sufficient for that purpose, but if not, then ratably and in proportion), the claims of all and every other of said creditors, without any priority or preference whatever. That the party of the second part, as soon as he converts the said property into money, shall notify each and every of the creditors of the parties of the first part, of the amount of money realized by him from the property hereby assigned to him and applicable to the payment of the debts of the parties of the first part under the terms of this assignment, together with the amount of the indebtedness of the parties of the first part, as nearly as the same may be ascertained by him, and of the time and place when and where he will proceed to pay out and distribute the amount of money realized by him from the property hereby assigned, in accordance with the provisions of this assignment, which said notice shall be written or printed, or partly written and partly printed, and served upon each of said creditors at least thirty (30) days previous to the time fixed in such notice for the distribution and payment of the said amount of money realized as aforesaid from the property hereby assigned: provided, that such service may be made by mailing such notice to the parties to be served; and all the creditors of the parties of the first part who shall not, on or before the day named in such notice, give notice to the party of the second part that they will accept the terms of

this assignment, and execute a release or releases in writing of their respective claims against the said parties of the first part, upon payment of the amount due to them as accepting creditors, shall be deemed to have failed and refused to accept the terms of this assignment, and shall be entitled to payment under the third provision of this assignment, relating to non-accepting creditors. And the said Albert R. Taber and George W. Willard doth hereby make, constitute, and appoint the said R. Goodwyn Murray and his successors in this trust, their true and lawful attorney, with full power and authority to do all acts necessary in the premises for the full and complete execution of the said trust. And the said party of the second part doth hereby accept the trust hereby created and reposed, and covenants and agrees to and with the said parties of the first part, that he will faithfully and without delay execute the same, according to his best knowledge, skill, and ability. In witness whereof, the parties to these presents hereunto set their hands and seals, the day and year first above written."

The Circuit Judge declared the deed void, set it aside, appointed a receiver, enjoined the assignee and agent from further administering the assets, and ordered them turned over to the receiver. From this decree the defendants appeal.

*Messrs. Dantzler & Dantzler* and *Raysor & Summers*, for appellants.

*Messrs. Mordecai & Gadsden* and *Glaze & Herbert*, contra.

March 20, 1896. The opinion of the court was delivered by

MR. CHIEF JUSTICE McIVER. At the hearing of this case on the 2d of January, 1896, a question as to the jurisdiction of the Supreme Court as then constituted to hear and determine this case, was raised. This being a question of the gravest character, involving the powers of one of the co-ordinate departments, the court requested the

attorney general to attend and argue the question, and argument was invited from any other member of the bar who might be disposed to discuss the question. The attorney general not being able to attend, he was represented by his assistant; and, after full argument from him and such other members of the bar as chose to participate, the court took the question under advisement, and on the next morning announced its conclusion in a short order, overruling the objection to the jurisdiction of the court as then constituted to hear and determine the case, saying that its reasons would be stated in an opinion subsequently to be prepared. Accordingly, the court will now proceed to set forth the grounds upon which its conclusion was based.

Inasmuch as the present Constitution declares, in subdivision 8, sec. 11, art. XVII., that "This Constitution, adopted by the people of South Carolina in convention assembled, shall be in force and effect from and after the 31st day of December, in the year 1895," there can be no doubt that the present Constitution had gone into effect when the question of jurisdiction was presented. It will be proper, therefore, to state such provisions of the present Constitution as are supposed to affect this question of jurisdiction. In section 2 of article V., it is provided, that "The Supreme Court shall consist of a Chief Justice and three Associate Justices, any three of whom shall constitute a quorum for the transaction of business, * * * and shall be so classified that one of them shall go out of office every two years." In section 3 of the same article, the provision is as follows: "The present Chief Justice and Associate Justices of the Supreme Court are declared to be the Chief Justice and two of the Associate Justices of said court, as herein established, until the terms for which they were elected shall expire; and the General Assembly, at its next session, shall elect the third Associate Justice, and make suitable provision for accomplishing the classification above directed." Section 6 of the same article, after designating the causes which shall disqualify a judge from presiding at

the trial of any cause, to wit: interest, relationship to any of the parties, having been of counsel or having presided in any inferior court, proceeds as follows: "In case all or any of the Justices of the Supreme Court shall be thus disqualified, or be otherwise prevented from presiding in any cause or causes, the court or the Justices thereof shall certify the same to the governor of the State, and he shall immediately commission, specially, the requisite number of men learned in the law for the trial and determination thereof." In section 12 of the same article it is provided, among other things, as follows: "Whenever, upon the hearing of any cause or question before the Supreme Court, * * * it shall appear to the Justices thereof, or any two of them, that there is involved a question of constitutional law, * * * or whenever the Justices of said court, or any two of them, desire it, on any cause or question so before said court, the Chief Justice, or in his absence the presiding Associate Justice, shall call to the assistance of the Supreme Court all of the judges of the Circuit Court." In section 34 of the same article the provision is: "All matters, civil and criminal, now pending within the jurisdiction of any of the courts of this State shall continue therein until disposed of according to law." In section 6 of article XVII., the provision is: "The General Assembly shall provide for the removal of all causes which may be pending when this Constitution goes into effect to courts created by the same." Section 11 of that article provides as follows: "That no inconvenience may arise from the change in the Constitution of this State, and in order to carry this Constitution into complete operation, it is hereby declared: First. That all laws in force in this State at the time of the adoption of this Constitution, not inconsistent therewith and constitutional when enacted, shall remain in force until altered or repealed by the General Assembly or expire by their own limitation." The third subdivision of that section reads as follows: "The provisions of all laws which are inconsistent with this Constitution shall cease upon its adop-

tion, except that all laws which are inconsistent with such provisions of this Constitution as require legislation to enforce them, shall remain in force until such legislation is had."

From this review of the several provisions of the present Constitution, which are supposed to affect the question of jurisdiction presented, we cannot entertain a doubt that the Supreme Court, as constituted at the time this case was heard, had full and complete jurisdiction to hear and determine the same. No one, we presume, could entertain a doubt that, but for the provisions of the present Constitution, this court, as then constituted, would have had full jurisdiction of the cause under the laws previously in force; and the framers of the Constitution, with that wise provision which might well be expected from such a body of men, while providing, in the third subdivision of section 11 of article XVII., that all laws inconsistent with the present Constitution should cease upon its adoption, expressly excepted all such laws as require legislation to enforce them until such legislation is had. Now, so far as this question is concerned, the only provision of the laws which were formerly in force, inconsistent with the provisions of the present Constitution, is that, under the laws previously in force, the Supreme Court, consisting of a Chief Justice and only two Associate Justices, or any two of them, had jurisdiction of any cause otherwise properly before it, while under sections 2 and 3 of article V., of the present Constitution, an additional Associate Justice is provided for; so that the Supreme Court shall consist of a Chief Justice and three Associate Justices, any three of whom shall constitute a quorum for the transaction of business. But this provision necessarily could not go into practical effect until the third Associate Justice was elected, and the General Assembly was expressly required, at its next session, to elect the third Associate Justice. This provision of the present Constitution, therefore, not only contemplated but necessarily required legislation to enforce it; and, therefore, under the express

terms of subdivision third of section 11, of article XVII., the previous laws remained in force until such legislation was had. Now this court will, of course, take judicial cognizance of the fact that, at the time this case was heard, no such legislation had been had. Indeed, the General Assembly had not then convened. From a careful consideration of the numerous provisions contained in the various subdivisions of section 11 of article XVII., it is very manifest that the framers of the Constitution, in order "that no inconvenience may arise from the change in the Constitution of this State," as they expressly say, did not intend that there should be any break in the administration of the government in any of its departments; and hence, in express terms, they provided, that where any of the provisions of the Constitution which required further legislation to enforce them were inconsistent with previous laws, which, of course, embraced constitutional as well as statutory provisions, such previous laws should remain in force until such further legislation was had.

This, it seems to us, is conclusive of the question; but, in deference to the gravity of the issue and the zeal and ability displayed by counsel who contended for a different view, we will notice briefly some of their arguments. It was contended—or, at least, that is the logical conclusion of the argument—that the present Constitution abolished the former Supreme Court as formerly established, and provided for a *new* tribunal, by the same name, it is true, but composed of different elements. We cannot accept that view. On the contrary, we think the intent was simply to provide for an additional member of the Supreme Court already in existence, and to change the term of office of such members of that tribunal as might thereafter be elected. We can hardly suppose that the convention, after having provided that the Chief Justice and the Associate Justices should *be elected* by the General Assembly, would have declared in the very next section that the present Chief Justice and Associate Justices should

be continued in office until the expiration of the respective terms for which they had been previously elected, if they had supposed they were establishing a *new* tribunal. Nor are we able to appreciate the force of the argument drawn from the provisions of section 6 of article V. That section manifestly provides for filling the place of one of the Justices who may be absent or disqualified, or "*be otherwise prevented from presiding*"—the words which we have italicized being regarded as important. But, as there was no third Associate Justice at the time this case was heard, and could not be until the General Assembly met, we do not think this section applicable. The argument drawn from the provisions of section 12 of article V. has no application to the present case, inasmuch as it is not pretended that any constitutional question is presented in the present case. But as there was a formal plea to the jurisdiction of this court filed in another case (*State* v. *Murphy*), in which it was stated that a constitutional question did arise, which plea was argued in connection with this case, and likewise disposed of by a short order overruling the plea, we will proceed to consider the question here. The argument seems to be, that as section 12, above referred to, provides that when a constitutional question is presented, "upon the determination of which the entire Court is not agreed," all the Circuit Judges shall be called to the assistance of the Supreme Court for the decision of such question. The contention is, that a case in which a constitutional question is presented must, in the first instance, be heard by the *entire* Court, consisting, as it is claimed, of four members; for, unless the *entire* Court is agreed upon such question, then the Circuit Judges must be called to the assistance of the Supreme Court for its decision. This argument rests upon the assumption—which, as we have shown above, is without foundation—that the Supreme Court, *at the time this plea was presented and determined*, consisted of four, instead of three, members, because, *at that time*, the General Assembly had not, and could

not have, made the necessary provision, not only contem-
plated, but expressly required, by the third section of the
fifth article of the Constitution, for the appointment of such
additional member of the Supreme Court; for, in section 9
of article III., it was expressly provided that the first ses-
sion of the General Assembly after the adoption of the pres-
ent Constitution should not be held until "the second
Tuesday [which was the 14th] in January, 1896," and this
plea was filed and was considered on the 2d and determined
on the 3d day of January, 1896. It is clear, therefore, that
the plea to the jurisdiction could not be sustained. From
what has been said above, we do not think there is any
force in the argument drawn from the provisions of section
6 of article XVII., which directs the General Assembly to
provide for the removal of all causes which may be pend-
ing when the present Constitution took effect to Courts
created by the same, for two reasons: First. Because, as has
been shown, the Supreme Court is not a Court *created* by
the present Constitution, which simply provides for an ad-
ditional member of that tribunal as previously constituted;
for, in the ninth subdivision of section 11 of article XVII.,
it is declared that "the provisions of the Constitution of
1868 and amendments thereto are repealed by this Consti-
tution, *except when reordained and declared herein*" (ital-
ics ours), and in section 1 of article V. of the present Con-
stitution it simply reordains and declares, in precisely the
same language which was used in section 1 of article IV.
of the Constitution of 1868, that "the judicial power of this
State shall be vested in a Supreme Court," etc.—manifestly
contemplating the continued existence of the *same* tribunal,
with only such changes in its framework and its powers as
were deemed expedient. Second. Because the provision in
section 34 of article V. of the present Constitution, that
"All matters, civil and criminal, now pending within the
jurisdiction of any of the courts of this State shall continue
therein until disposed of according to law," in *terms* recog-
nizes the continued existence of all the courts of the State,

except such as were expressly abolished and new courts created instead thereof.

Having thus disposed of the preliminary question of jurisdiction, we will now proceed to consider the case' on its merits. On the 19th of January, 1895, the defendants, Taber & Willard, executed a deed of assignment to their codefendant, Murray, for the benefit of their creditors—copartnership as well as individual, as it is claimed—and the defendant, Legare, was subsequently appointed agent of the creditors. The plaintiffs having obtained judgment against Taber & Willard on a copartnership debt, and against Willard on his individual debt, on the 8th of February, 1895, and the executions issued to enforce said judgments having been returned wholly unsatisfied, this action was commenced on the 16th of March, 1895, for the following purposes: (1) To have the said deed of assignment set aside as void and of no effect, (2) to restrain and enjoin the defendants, Murray and Legare, from proceeding further under said deed; (3) for the appointment of a receiver of the property of the copartnership of Taber & Willard, and also that of the individual members of said firm, with authority to sell and dispose of the same, and apply the proceeds of such sale to the payment of the aforesaid judgments, and that the balance remaining after the payment of the costs and expenses of these proceedings be applied in such manner among the creditors of the said defendants as may be provided by law; (4) for such other relief as the nature of the case may require. At the time of the service of the summons and complaint, the defendants were also served with an order, signed by his honor, Judge Watts, bearing date 15th of March, 1895, enjoining the defendants, Murray and Legare, from proceeding further under said deed of assignment until the further order of the court, requiring the defendants to show cause before the said judge, on the 25th of March, 1895, why such restraining order should not be continued until the final hearing of the cause, and also why a receiver should not be appointed as

prayed for in the complaint, and enjoining the defendants, Taber & Willard, from assigning, disposing of, or in any manner interfering with, the property embraced in the deed of assignment until the further order of the court.    To this rule to show cause the defendants filed returns, which were intended and treated as answers to the complaint, and, by consent of all parties, the case was heard by Judge Watts on its merits, upon the papers above mentioned and certain admissions made at the hearing.    The returns and answers of the defendants appear in the case, but need not be set forth here, as the court is pleased to observe that no moral fraud or intentional wrong is imputed to any of the parties, and there does not seem to be any ground for any such imputation.    The only admission which it is necessary to notice is thus stated in the case: "It was also admitted that the deed of assignment was executed by Albert R. Taber and George W. Willard, both as copartners and as individuals, and that all of the assigned real and personal property, save and except the books of account and certain evidences of indebtedness, was sold by the assignee and agent, under the deed of assignment, before the 15th day of March, 1895, and the purchasers before that time were, and still are, in possession of the same."    The case turned entirely upon the legal questions arising as to the proper construction and legal effect of the deed of assignment, a copy of which (with the exception that it does not show how it was signed) is set out in the "Case," and should be embraced in the report of this case.    The Circuit Judge held that the assignment was void, for the reasons stated by him, as follows: "It appears upon the face of the deed that individual creditors are allowed to share in copartnership assets before the payment in full of copartnership debts; and, secondly, no provision is made in the deed for copartnership creditors sharing in individual assets, as is provided by law; and, thirdly, because, there being no *habendum* clause in the deed, only a life estate passed to the assignee under the deed, if any estate passed at all.

For either of these reasons, in my judgment, the deed of
assignment is null and void." He, therefore, rendered judg-
ment (1) declaring said deed ·null and of no effect, "and
that no title passed thereunder to the assignee named
therein to either the real or personal property alleged to be
conveyed by said deed;" (2) that the defendants, Murray
and Legare, be enjoined "from proceeding further under
said deed of assignment, or in any manner disposing of or
interfering with the property purporting to be conveyed
thereby;" (3) requiring that the defendants, Murray and
Legare, "do forthwith deliver possession to the receiver
about to be appointed herein of all the real, personal, and
mixed property in their hands as such assignee and agent,
and all cash proceeds of sale of any property which they
may have sold under said deed of assignment, nothing in
this order to be construed as validating the sale of any pro-
perty which may have theretofore been sold by them under
said deed;" (4) appointing a receiver, and authorizing him
to institute such actions as he may be advised by his coun-
sel; (5) requiring the plaintiffs, within thirty days, to file
the usual injunction undertaking in the sum of $250.
From this judgment the defendants appeal, upon the seve-
ral grounds set out in the record, which need not be stated
in detail here, as they practically raise but two questions:
(1) Whether there was error in setting aside the deed of
assignment; (2) whether there was error in appointing a
receiver.

We are not prepared to concur with the Circuit Judge on
the third ground upon which he held the deed of assign-
ment to be void, to wit: the absence of the *haben-*
*dum* clause in the deed. On the contrary, we are of
opinion that, under a proper construction of the
deed of assignment, a fee, and not merely a life, estate
passed to the assignee, notwithstanding the absence of a
formal *habendum* clause. In the first place, in the grant-
ing clause, the conveyance is to "the said party of the
second part (the assignee), his heirs, executors, administra-

tors, and assigns." But, in addition to this, a deed of assignment being a conveyance in trust, the rule is well settled that, "Wherever a trust is created, a legal estate sufficient for the purposes of the trust shall, if possible, be implied in the trustee, whatever may be the limitations in the instrument, whether to him and his heirs or not." Perry on Trusts, § 312. So, in Washb. Real Prop., book 2, chap. 3, sec. 2, subd. 43, after speaking of certain exceptions to the rule that the word "heirs" is necessary, in a deed, to carry the fee, the writer used this language: "Another exception is that the word 'heirs' is not always necessary in order to give an equitable estate the character of inheritability, if it requires that such an effect should be given in order to carry out the clear intention of the party creating it." Now, in this case, the deed of assignment shows on its face the clear intention, on the part of the assignors, to provide for the payment of their debts "by an assignment of all their property * * * for the benefit of all their creditors," and this clear intention could not be effected without construing the deed as a conveyance of the entire estate and interest which the assignors had in such property, as, indeed, the words "*all their property*" manifestly import. This view is also supported by the cases of *Bratton* v. *Massey*, 15 S. C., 277, and *Fuller* v. *Missroon*, 35 S. C., 314. Besides, it will be noticed that there is a provision in the deed of assignment whereby the assignee is appointed and constituted, by the assignors, "their true and lawful attorney, with full power and authority to do all acts necessary in the premises for the full and complete execution of the said trust." And if, as the deed shows on its face, the assignors were insolvent, "and unable to pay their debts in full," then it would be necessary, "for the full and complete execution of the said trust," that the assignee should have full power to sell and dispose of the *entire estate* or interest of the assignors in the property assigned; and such power was, in express terms, conferred upon the assignee. We do not think,

therefore, that a life estate only was conveyed to the assignee, and that the assignment was, therefore, a mere partial assignment, as the Circuit Judge seems to have supposed.

But we agree with the Circuit Judge that the assignment was void because it provided for preferences not allowed by the statute. The manifest object of section 2014 of the General Statutes of 1882, now incorporated in the Revised Statutes of 1893 as section 2146, was to prevent any preference among creditors whatsoever, except such as were in terms allowed by that section, to wit: in favor of "debts due to the public," and in favor of "such creditors as may accept the terms of such assignment, and execute a release of their claim against the debtor," and to declare any assignment providing for any preference other than those allowed, to be absolutely null and void. Hence, when a deed of assignment is assailed as being in violation of the statutory provision, the question of fraud is not necessarily involved, but the inquiry is, whether the assignment provides for any preference whatever, other than those specially allowed, without regard to the intention of the parties. *Lamar* v. *Pool*, 26 S. C., at page 447. The question in this case, therefore, is, does this assignment provide for any illegal preference? Since the case of *Blair* v. *Black*, 31 S. C., 346, it must be regarded as the settled law of this State that, in the distribution of the assets of insolvent persons, partnership creditors are entitled to be first paid out of the partnership assets, and, if these assets be insufficient for the payment in full of the partnership creditors, then for any balance due such creditors, they are entitled to share ratably with the individual creditors of the persons composing the partnership, in the individual assets of such persons; but the creditors of the individuals composing the partnership are not entitled to share in the partnership assets until the partnership creditors are paid in full. If, therefore, the assignment here in question, which embraced both partnership and individual property, provides for the

distribution of the proceeds of the assigned property in violation of the rule above stated, then it must be declared void, as providing for illegal preferences, just as in the case of *Blair* v. *Black, supra.*

The plaintiffs claim, by their complaint and in their argument here, that it appears, upon the face of the deed, "that individual creditors are allowed to share, by the provisions thereof, in copartnership assets before the payment in full of copartnership debts, and no provision is made therein for copartnership creditors to share individual assets." And this seems to have been the view taken by the Circuit Judge. It seems to us, however, that the real vice in the deed is that it makes no provision whatever for the payment of the debts due by the individuals composing the firm of Taber & Willard, even out of the assets of such individuals, but appropriates the whole of the assets, conssssting of both copartnership and individual property, to the payment of copartnership debts. It is true, that it was admitted at the hearing, "that the deed of assignment was executed by Albert R. Taber and George W. Willard, both as copartners and as individuals;" but that admission only shows that the deed was *so executed* as to pass the title to the assignee to both the copartnership and the individual property, as the deed on its face purports to do. But it does not touch the question as to what was to be done with the property so conveyed. For that we must look to the terms used in the deed. That instrument, throughout its various provisions, speaks only of the creditors of "the parties of the first part." And who are those parties? The deed answers: "Albert Taber and George W. Willard, partners in trade, doing business in the town of Fort Motte, in the county and State aforesaid, under the style of Taber & Willard." The deed then recites: "The parties of the first part (Taber & Willard) being * * * unable to pay *their* debts in full, but desiring to provide for the payment of *the same* by an assignment of their property belonging to them as such copartners and

as individuals, for the benefit of all *their* creditors, without preference or priority of any kind whatsoever, save only to such of the creditors *of the parties of the first part*" as shall accept and release. Then, in declaring the trust, we find this language: "*Second*, to pay and discharge in full * * * the claims of such of the creditors *of the parties of the first part* who shall accept," etc.; "*third*, and then and next to pay in full * * * the claims of all and every other of *said creditors*, without any priority or preference whatever" (italics ours). And so on throughout the deed we find that the only creditors who are provided for are the creditors *of the parties of the first part*, who, as we have seen, are the copartnership styled Taber & Willard; and nowhere is any provision made for the payment of the debts due by the individuals composing that partnership, although the individual property of those persons is, in terms, embraced in the deed of assignment. If this be the correct view of the effect of the deed of assignment, then, as it appears in the "Case," that the plaintiffs are creditors not only of the partnership of Taber & Willard but also of George W. Willard, one of the members of that firm, the plaintiffs are entitled to have the assignment set aside, as containing a preference in favor of the copartnership creditors. If, however, we are mistaken in the view which we have taken, that the deed of assignment makes no provision for the payment of the individual creditors, and that the more correct view is that the terms of the deed, read in the light of the admission above referred to, show that the parties designated as *the parties of the first part* include the individuals composing the partnership of Taber & Willard as well as the partnership itself, then it is clear that the ground upon which the deed was assailed by the plaintiffs as containing a preference in favor of the individual creditors against the copartnership creditors, which seems to have been adopted by the Circuit Judge, is well founded. So that, in either view, the assignment provided for an illegal preference, and must, therefore, be declared void.

The position taken by the appellant's counsel, based upon the declaration of the assignee and agent of the creditors in their return to the rule to show cause above referred to, that they intend to distribute the assets in accordance with the rule above laid down in the case of *Blair* v. *Black*, cannot be sustained. In the first place, the assignee and agent would have no authority to do so, if the deed provides otherwise. That deed is their chart, and beyond it they have no power to go. Besides, as was well said by the late Chief Justice Dunkin, in *Jacot* v. *Corbett*. Cheves Eq., at page 74, and quoted with approval by Mr. Justice McGowan in *Claflin* v. *Iseman*, 23 S. C., at page 425, "the character of the transaction must be determined by the interests of the parties at the time, and not by subsequent events." Most assuredly, if a deed of assignment provides for an illegal preference, no assurance by the assignee and agent of creditors of a purpose to disregard such preference, and to distribute the assets according to law, even if supported by the strongest possible guaranty, could have the effect of relieving a deed from a vice declared by statute to be fatal to its validity. Satisfied, as we are, that this deed of assignment is void for providing for an illegal preference among the creditors, the Circuit Judge was clearly right in adjudging that it should be set aside.

The last ground of appeal alleges error in so much of the judgment as provides for the appointment of a receiver. We do not think that any proper case was made calling for the appointment of a receiver. This was not a creditors' bill, and there was no provision for calling in creditors. The plaintiffs, having recovered judgment, met with an obstacle in enforcing the payment of the same in the shape of this deed of assignment, and when that obstacle is removed, we see no reason why the plaintiffs may not proceed in the ordinary way to enforce their judgments. They may, as was done in the case of *Claflin* v. *Iseman*, apply for an order for the payment of the amount due on

their judgments from the proceeds of the sale of such property as their judgments were a first lien upon, or may take such other proceedings for that purpose as they may be advised are proper. We think, therefore, that so much of the judgment appealed from as provides for the appointment of a receiver must be reversed, and in all other respects the judgment must be affirmed. Inasmuch as those persons who may have purchased any of the assigned property at the sale made by the assignee before this action was commenced are not parties to this action, we are not to be understood as expressing, or even intimating, any opinion as to the rights of such purchasers.

The judgment of this court is, that so much of the judgment of the Circuit Court as provides for the appointment of a receiver be reversed, and that, in all other respects, the judgment of the Circuit Court be affirmed.